KILPATRICK TOWNSEND & STOCKTON LLP
JAMES G. GILLILAND, JR. (State Bar No. 107988)
TIMOTHY R. CAHN (State Bar No. 162136)
MEHRNAZ BOROUMAND SMITH (State Bar No. 197271)
HOLLY GAUDREAU (State Bar No. 209114)
RYAN BRICKER (State Bar No. 269100)
Two Embarcadero Center Eighth Floor
San Francisco, CA  94111
Telephone:  (415) 576-0200
Facsimile:  (415) 576-0300
Email: jgilliland@kilpatricktownsend.com
       tcahn@kilpatricktownsend.com
       mboroumand@kilpatricktownsend.com
       hgaudreau@kilpatricktownsend.com
       rbricker@kilpatricktownsend.com

Attorneys for Plaintiff
SONY COMPUTER ENTERTAINMENT AMERICA LLC

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONY COMPUTER ENTERTAINMENT AMERICA LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE HOTZ; HECTOR MARTIN CANTERO; SVEN PETER; and DOES 1 through 100,<br><br>Defendants. | CASE NO. 11-cv-00167 SI<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION RE: TRO**<br><br>Date: February 10, 2011<br>Time: 10:00 a.m.<br>Courtroom: 10, 19th Floor<br>Judge: Hon. Susan Illston |



# TABLE OF CONTENTS

Page

I. INTRODUCTION ....... 1

II. SCEA'S IRREPARABLE HARM IS ONGOING, AND IF HOTZ IS RELEASED FROM THE TRO, WILL CONTINUE. ....... 2

III. THE TRO IS NOT VAGUE OR OVERBROAD BUT IS APPROPRIATELY TAILORED TO ADDRESS HOTZ'S VIOLATIONS AND SCEA'S HARM ....... 3

A. The Injunction Does Not Prohibit Hotz From Engaging In Other Activity Unrelated to SCEA's Claims ....... 3

B. The Injunction Is Not Impossible To Perform ....... 4

C. Hotz Should Be Retrained From Publishing Information That He Has Obtained As A Result of His Illegal Activities ....... 4

IV. THE IMPOUNDMENT ORDER IS AUTHORIZED BY THE DMCA AND TAILORED TO STOP HOTZ'S VIOLATIONS AND ADDRESS SCEA'S HARM. ....... 7

V. CONCLUSION ....... 9



# TABLE OF AUTHORITIES

Page

**CASES**

*321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F.Supp.2d 1085 (N.D.Ca. 2004) .......... 5

*A & M Records v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002) .......... 3

*E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280 (9th Cir. 1992) .......... 3

*United States v. Elcom Ltd.*, 203 F.Supp.2d 1111 (N.D.Cal. 2002) .......... 5

*Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2nd Cir. 2001) .......... 3, 5, 6

*Universal City Studios, Inc. v. Reimerdes*, 111 F.Supp.2d 294 (S.D.N.Y. 2000) .......... 2, 3, 5, 6

**STATUTES**

17 U.S.C. §1203(a) .......... 2

17 U.S.C. §1203(b)(2) .......... 7

Fed. R. Civ. P. 65(d)(1)(C) .......... 3

**OTHER AUTHORITIES**

U.S. Const., Amend I .......... 1, 4



## I. INTRODUCTION

Defendant George Hotz ("Hotz") does not dispute liability. He limits his Motion for Hearing on Temporary Restraining Order ("Motion") to arguments about the purported overbreadth and vagueness of this Court's TRO and impoundment order (the "Order") entered on January 27, 2011 . Hotz contends that the Order is overbroad because it prohibits him from hacking other companies' secure systems and because it requires him to do the "impossible": retrieve information distributed through the Internet. The Order does neither. He further argues that he should remain free to continue his campaign of "unauthorized access" to the PlayStation®3 computer entertainment system ("PS3 System") and to publish information gained thereby, despite his having unlawfully circumvented the Technological Protection Mechanisms ("TPM") in the PS3 System and having trafficked in circumvention technologies – charges he does not, and cannot, refute.

Hotz argues, but fails to establish, that the impoundment provisions of the Order violate the law – indeed, the DMCA statute expressly authorizes it – or to show that impoundment creates any demonstrated hardship to him. Any minor hardship that Mr. Hotz may incur pales in comparison to the irreparable harm to SCEA that will result if he continues to have access to the technologies that circumvent the security measures of the PS3 System. Finally, Mr. Hotz's contentions concerning First Amendment limits on the TRO are easily dismissed. Numerous courts, including this Court, have rebuffed similar attacks on the remedies provided by the DMCA.

The Court's Order is appropriately worded and should remain unaltered to prevent further irreparable harm to SCEA from Hotz's distribution of circumvention technologies and information enabling others to circumvent the TPMs of the PS3 System. Indeed, SCEA recently obtained information that Hotz already has violated the TRO by surreptitiously posting online a link to a site containing the MTLDR Keys despite this Court's express order that he cease such conduct.

## II. SCEA'S IRREPARABLE HARM IS ONGOING, AND IF HOTZ IS RELEASED FROM THE TRO, WILL CONTINUE.

For all the reasons stated in SCEA's opening papers, SCEA is irreparably harmed by Hotz's continued ability to circumvent the PS3 System. SCEA is the exclusive distributor of the PS3 System in the United States and has been irreparably harmed by Hotz's conduct. 17 U.S.C. §1203(a) states that "[a]ny person injured by a violation of [the DMCA anti-circumvention provisions] may bring a civil action in an appropriate United States district court for such violation." SCEA has repeatedly put forth evidence of the significant harm to SCEA that Hotz's activities have caused. *See, e.g.,* Declaration of Ryan Bricker In Support of *Ex Parte* Motion for Temporary Restraining Order and Order To Show Cause Re Preliminary Injunction, (Docket No. 42), ¶2, Exh. A. Hotz cynically argues that, because some harm has been accomplished already, it should be allowed to continue unchecked. Hotz fails to recognize that, if Hotz is permitted to continue using and distributing his Circumvention Devices, SCEA's efforts to limit further harm will be significantly frustrated. Indeed, beginning only a few days after Hotz published his Circumvention Devices, technology news outlets have published and continue to publish stories of gamers using their "jailbroken" PS3 Systems to cheat in online video game forums, threaten the fairness and integrity of online game play, and ruin the communal gaming experience for legitimate gamers. Declaration of Holly Gaudreau In Support of Plaintiff's Opposition to Defendant's Motion Re: TRO ("Gaudreau Decl."), ¶4, Exhs. C. This damages SCEA's reputation and goodwill, and harms its relationships with video game developers and customers.

Confronting a similar situation in which a circumvention device had already been distributed, and the plaintiff sought to prevent the defendants' further distribution and resulting harm, the court explained that the defendants "would harm plaintiffs every day on which they post [the circumvention device] on their heavily trafficked web site." *Universal City Studios, Inc. v. Reimerdes,* 111 F.Supp.2d 294, 344 (S.D.N.Y. 2000). The court emphasized that the defendants should not be allowed to continue to inflict

"immediate and irreparable injury" on the plaintiffs simply because others might do so as well. *Id*. Finding that modern technology's ability to swiftly disperse information has not "withered the strong right arm of equity," the court expressed confidence in the likelihood "that [its] decision will serve notice on others that 'the strong right arm of equity' may be brought to bear against them absent a change in their conduct and thus contribute to a climate of appropriate respect for intellectual property rights in an age in which the excitement of ready access to untold quantities of information has blurred in some minds the fact that taking what is not yours and not freely offered to you is stealing." *Id.* at 344-45 (quoted in *Universal City Studios, Inc. v. Corley,* 273 F.3d 429, 442 (2nd Cir. 2001)).

## III. THE TRO IS NOT VAGUE OR OVERBROAD BUT IS APPROPRIATELY TAILORED TO ADDRESS HOTZ'S VIOLATIONS AND SCEA'S HARM

The TRO entered by this Court is clear, narrowly tailored to address Hotz's wrongs and SCEA's harm, and "describe[s] in reasonable detail. . .the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C). Under Ninth Circuit law, courts must "not set aside injunctions under this rule "'unless they are so vague that they have no reasonably specific meaning.'" *A & M Records v. Napster, Inc.*, 284 F.3d 1091, 1097 (9th Cir. 2002), *quoting E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1297 (9th Cir. 1992). As set forth below, the TRO is not vague or overbroad, nor has Hotz offered any credible reason why he cannot and should not comply with its terms.

### A. The Injunction Does Not Prohibit Hotz From Engaging In Other Activity Unrelated to SCEA's Claims

Hotz complains that the injunction improperly prohibits him from engaging in "legal" circumvention activities involving other systems. It does not. Hotz is deliberately creating ambiguities where none exist. The injunction is currently limited to SCEA's PS3 System. Therefore, Paragraph 1 of the TRO, which defines "circumvention devices" by referring to "other copyrighted works," obviously is meant to refer to those works that are accessible through and compatible with the PS3 System, such as the copyrighted video



game software playable on the PS3 System. To clarify this point even further, SCEA has offered to Mr. Hotz's counsel that it will modify the last sentence of Paragraph 1 to read: "and other copyrighted works that are accessible through and compatible with the PS3 System." Counsel for Mr. Hotz, however, has not yet responded to SCEA's offer. Gaudreau Decl., ¶5.

**B. The Injunction Is Not Impossible To Perform**

Hotz claims that the injunction is impossible to perform because it requires him to "retrieve the Internet." Not so. The injunction simply requires Hotz to take down the circumvention devices or any information relating thereto that ***he*** has "previously delivered or communicated to" the other defendants or any third parties. *See* TRO at 3. Hotz can identify all the parties to whom he trafficked this information and issue a joint demand with SCEA for its retrieval. He is required only to retrieve the circumvention devices and illicit information from those he knows have it.

**C. Hotz Should Be Retrained From Publishing Information That He Has Obtained As A Result of His Illegal Activities**

Hotz asserts that the injunction is overbroad because he is restrained from publishing information relating to his circumvention activity and unauthorized access to the PS3 System or PlayStation Network ("PSN"), even if that information is not otherwise protected by copyright. To the contrary, enjoining Hotz from the publication of information obtained through his illegal hacking of the PS3 System is a reasonable and necessary restriction designed to: (1) prevent Hotz from taking further advantage of his unlawful circumvention; and (2) protect SCEA from further harm stemming from the distribution of information obtained through Hotz's hacks. Indeed, Hotz would have never obtained this information but for his illegal conduct. He should not be allowed to make an end run around the purpose and effect of the injunction by publishing the fruits of his illegal activity.

Hotz's argument that this restriction violates the First Amendment runs contrary to



established DMCA law. Because information and material obtained by Hotz through his circumvention – including the Metldr Keys – constitutes a circumvention device or part thereof, the restriction against his distribution is rooted in the anti-trafficking provisions in the DMCA. His argument is unpersuasive for the same reasons that analogous arguments failed in previous DMCA cases, including *321 Studios v. Metro Goldwyn Mayer Studios, Inc.,* 307 F.Supp.2d 1085 (N.D.Cal. 2004); *United States v. Elcom Ltd.,* 203 F.Supp.2d 1111 (N.D.Cal. 2002); *Universal City Studios, Inc. v. Corley,* 273 F.3d 429 (2nd Cir. 2001); and *Universal City Studios, Inc. v. Reimerdes,* 111 F.Supp.2d 294 (S.D.N.Y. 2000). The holdings in those cases make clear that, because the activity restricted by the DMCA's anti-trafficking provisions includes both speech and non-speech aspects, and because the anti-trafficking provisions target only the non-speech aspect of the prohibited activity, the restrictions against distributing circumvention devices – including linking to websites where the devices can be found or offering instructions for locating a circumvention device – are content-neutral, justified, and not overbroad. *See 321 Studios v. Metro Goldwyn Mayer Studios, Inc.,* 307 F.Supp.2d 1085, 1100-01 (N.D. Cal. 2004). Confronting a similar argument in *321 Studios*, this Court quoted the Second Circuit's *Corley* opinion, explaining:

> This type of regulation is therefore content-neutral, just as would be a restriction on trafficking in skeleton keys identified because of their capacity to unlock jail cells, even though some of the keys happened to bear a slogan or other legend that qualified as a speech component. *321 Studios v. Metro Goldwyn Mayer Studios, Inc*., 307 F.Supp.2d 1085, 1100 (N.D. Cal. 2004) *(quoting Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 454 (2nd Cir. 2001)).

Similar to the DeCSS keys at the center of the *321 Studios* case and the skeleton keys in the analogy above, there is a distinctly functional, non-speech aspect to Hotz's distribution of material and information that he obtained by circumventing the PS3 System. The material and information that Hotz has gathered as a result of his circumvention enables others to bypass or disable certain technological protection measures in the PS3 System. Accordingly, it essentially "has the capacity to unlock jail



cells." *Compare with Universal City Studios, Inc.,* 111 F.Supp.2d at 328-29 ("The computer code at issue in this case, however, does more . . . than convey a message. . . . [I]t has a distinctly functional, non-speech aspect in addition to reflecting the thoughts of the programmers. It enables anyone who receives it and who has a modicum of computer skills to circumvent plaintiffs' access control system.").

The language in the immediate injunction prevents Hotz from disseminating the material and information that "has the capacity to unlock jail cells," so to speak. Like the relief at issue in *Reimerdes* and *Corley*, the immediate injunction "is focused squarely upon the effect of the distribution of the functional capability that the code provides." *Universal City Studios, Inc.,* 111 F.Supp.2d at 329. Indeed, SCEA only seeks to preclude Hotz from posting, linking to, or discussing the proprietary material and information that Hotz illegally gathered during his circumvention activities; the restriction is reasonable because Hotz has repeatedly distributed portions of that materials and information in an effort to aid others' circumvention efforts, and ultimately to facilitate copyright infringement. In fact, the restriction is particularly critical because Hotz has continued linking to the Metldr Keys even after this Court issued a Temporary Restraining Order against that very activity. Gaudreau Decl., ¶2-3, Exhs. A and B.[1]

Because the language of the immediate injunction targets the non-speech aspect of his defendant's activity, and because Hotz has shown that he will continue to distribute this material in defiance of this Court's direction, the injunction barring Hotz from "distributing any information . . . or other material obtained by circumvention" is neither overbroad nor does it burden more speech than is necessary or permissible.[2]

[1] Confronting similar circumstances where the defendants continued to link to websites distributing the subject circumvention device following the issuance of a preliminary injunction, the district court in *Reimerdes* explained that the "defendants obviously hoped to frustrate plaintiffs' recourse to the judicial system by making effective relief difficult or impossible." *Universal City Studios, Inc.,* 111 F.Supp.2d at 313.

[2] The district court in *Reimerdes* further explained: "Any impact on the dissemination of [defendant's] ideas is purely incidental to the overriding concerns of promoting the distribution of copyrighted works in digital form while at the same time protecting those works from piracy and other violations of the exclusive rights of copyright holders." *Universal City Studios, Inc.,* 111 F.Supp.2d at 329.



## IV. THE IMPOUNDMENT ORDER IS AUTHORIZED BY THE DMCA AND TAILORED TO STOP HOTZ'S VIOLATIONS AND ADDRESS SCEA'S HARM.

The DMCA expressly authorizes this Court "at any time while an action is pending, [to] order the impounding, on such terms as it deems reasonable, of any device or product that is in the custody or control of the alleged violator and that the court has reasonable cause to believe was involved in a violation." 17 U.S.C. §1203(b)(2). To permit Mr. Hotz adequate time to prepare for the impoundment, the Court delayed implementation of this portion of the TRO for 10 business days.

Hotz has acknowledged that the circumvention and related software is stored on his computers. Moreover, SCEA has shown that Hotz's computer(s), PS3 Systems, and other storage devices have been "involved in a violation" under the DMCA. Specifically, Hotz has used his computer(s) to circumvent TPMs in the PS3 System in order to obtain the "Metldr Keys" which he then distributed through his website. Declaration of Ryan Bricker In Support of *Ex Parte* Motion for Temporary Restraining Order and Order To Show Cause Re Preliminary Injunction, (Docket No. 42), ¶23, Exh. V. Additionally, utilizing his computer(s), Hotz wrote code – the 3.55 Firmware Jailbreak, the dePKG Firmware decrypter, and the Signing Tools – that can be used to bypass the TPMs in the PS3 System and distributed these circumvention devices to third parties. *Id.* at ¶¶23 and 25, Exhs. V and X. As demonstrated in the video that he posted on YouTube, Hotz also has jailbroken at least one PS3 System using his 3.55 Firmware Jailbreak, thereby turning the machine into a circumvention device. *Id.* at ¶24, Exh. W. To do so, he used a storage device to load the 3.55 Firmware Jailbreak software onto his PS3 System. *Id.* Thus SCEA has clearly established, and Hotz has not rebutted, that he used the devices that are subject to the impoundment order in violation of the DMCA.

The impoundment order is necessary to (1) prevent Hotz's further access to these circumvention technologies during the pendency of this action; and (2) prevent further harm to SCEA. The risk of harm to SCEA is clear. For example, Hotz has already admitted to playing unauthorized video games after circumventing the PS3 System,

stating that "playing super mario world [*i.e.*, a game not even licensed to be played for the PS3] made all my time investments worth it." Second Supplemental Declaration of Ryan Bricker In Support of *Ex Parte* Motion for Temporary Restraining Order, (Docket No. 22), ¶5, Exh. D. Hotz likely did so using the jailbroken PS3 System, a subject of the impoundment order. Any use by Hotz of that System constitutes unlawful conduct and there is no good reason for Hotz to hang on to the machine. Nor will Hotz suffer any harm from not having access to the jailbroken PS3 System. In contrast, SCEA will suffer significant harm in that Hotz will be able to continue his efforts to circumvent the TPMs in the PS3 System and continue playing unauthorized or pirated video games.

Similarly, Hotz should not have access to the tools he used to circumvent the PS3 System – the circumvention software that he admits reside on his computer(s) and on other storage devices. Hotz has already demonstrated through his conduct since the issuance of the injunction that he will not abide by this Court's order. Indeed, *on the day after the Court issued its TRO*, Hotz posted a link on the <www.psx-scene.com> forum to the "Metldr Keys" – one of the subjects of the injunction. Gaudreau Decl., ¶2-3, Exhs. A and B. As Hotz has no qualms about violating this Court's order, it is important to completely remove the circumvention devices from Hotz's possession. Similarly, it is important to impound the machines that he has used to create and distribute those devices. Hotz's desire to maintain this information in his possession is suspect at best and together with his post-injunction conduct leads to the conclusion that he will likely continue his circumvention efforts unless the impoundment order is strictly enforced.

Perhaps equally telling is the fact that Hotz, through his counsel, has rejected all offers by SCEA to discuss alternatives to impoundment, stating that he would rather go with an "all or nothing" approach to impoundment. Gaudreau Decl., ¶5. In a further attempt to alleviate any concerns of Hotz's counsel, SCEA's counsel sent an email to him offering to move the location of impoundment closer to his client's residence and to allow Mr. Hotz to create copies of files that he needed in order to perform his employment



duties. *Id*. at ¶5. Hotz's counsel, however, has not yet responded to SCEA's offer. *Id.* Hotz's unwillingness to consider or propose a compromise on this issue shows that he is not truly concerned about either his employment opportunities or any discrete privacy issue – rather he simply wants to maintain possession of the circumvention devices and the tools he has used to exploit or distribute them.

Indeed, Hotz has demonstrated no unusual hardship to him that will result from the impoundment of these computers and devices, and certainly no hardship that outweighs the potential harm to SCEA if he continues to have access to them. In fact, Hotz has not even submitted a declaration to support his lawyer's assertion that Mr. Hotz's consulting efforts – whatever they may be – will be impacted by not having the computers. And he has had 10 business days to obtain other computers to use for activities not prohibited by the Court's Order. On the other hand, the harm to SCEA if the impoundment order is not upheld is that Hotz will continue his circumvention efforts and threaten further irreparable harm to SCEA's business.

**V. CONCLUSION**

For the reasons set forth above, SCEA respectfully requests that the Court deny Defendant's request that the TRO be modified.

Respectfully submitted,

DATED: February 9, 2011

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ James G. Gilliland, Jr.*
JAMES G. GILLILAND, JR.

Attorneys for Plaintiff
SONY COMPUTER ENTERTAINMENT AMERICA LLC

63147721 V1

