Volume 1

Pages 1 – 36

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SUSAN ILLSTON, JUDGE

```
SONY COMPUTER ENTERTAINMENT     )
AMERICA, LLC,                   )
                                )
            Plaintiff,          )
                                )
  VS.                           ) NO. C 11-00167 SI
                                )
GEORGE HOTZ, ET AL.,            )
                                )  San Francisco, California
            Defendants.         )  Thursday
                                )  February 10, 2011
_____)  10:29 a.m.
```

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:          KILPATRICK TOWNSEND
                        Two Embarcadero Center
                        Eighth Floor
                        San Francisco, California  94111
                  BY:   JAMES G. GILLILAND, JR., ESQ.
                        HOLLY GAUDREAU, ESQ.
                        RYAN BRICKER, ESQ.


For Defendant George Hotz:
                        LAW OFFICES OF STEWART KELLAR
                        148 Townsend Street
                        Suite 2
                        San Francisco, California  94107
                  BY:   STEWART KELLAR, ESQ.


Also Present:           MICHAEL EDELMAN

Reported by:            BELLE BALL, CSR #8785, RMR, CRR
                        Official Reporter, U.S. District Court

1   **THURSDAY, FEBRUARY 10, 2011**                              **10:29 A.M.**

2                          **P R O C E E D I N G S**

3          **THE CLERK:**  Calling Civil 11-167, Sony versus Hotz.

4   Please state your name for the Record, please.

5          **MR. GILLILAND:**  Good morning, Your Honor.  Jim

6   Gilliland, with Holly Gaudreau and Ryan Bricker, for Plaintiff

7   Sony Computer Entertainment America.

8          Also present in the courtroom is Michael Edelman from

9   Sony Computer Entertainment.

10         **THE COURT:**  Good morning.

11         **MR. KELLAR:**  Good morning, Your Honor.  Stewart

12  Kellar for Defendant George Hotz.

13         **THE COURT:**  Good morning.

14         **MR. KELLAR:**  Good morning.

15         **THE COURT:**  What I want to discuss today is the -- is

16  the preliminary injunction and the existing TRO.

17         Mr. Kellar is correct that at the last hearing we

18  had, my -- my primary concern then was the jurisdictional

19  issue, and that's certainly what we talked about most, and I

20  got further briefing on.

21         When I decided to resolve that in favor of Sony at

22  least at this stage, I basically entered the TRO you had

23  requested, but Mr. Kellar really hadn't had a chance to talk

24  very much about the specifics of it, or point out particular

25  issues with respect to that.  So, I do think it's appropriate

1    that we have this discussion on it.

2         And then, the second thing that I wanted to talk

3    about -- and this kind of got away from me, and I apologize for

4    that -- is the timing of the preliminary injunction, because,

5    of course, TROs normally are good only for ten days, unless

6    they are extended.

7         I had expected that you would agree upon a date for

8    both the motions and for the preliminary injunction hearing.  I

9    thought that's what had happened.  But I realize now that the

10   only thing that had been agreed on was the date for the motion

11   hearing, and the preliminary injunction hearing is kind of up

12   in the air in that respect.  And it can't stay there, because

13   that TRO is only good for a short period of time.  So I want to

14   talk about both those issues today, and see if we can resolve

15   some things.

16        I've looked at the papers that you've filed recently.

17   And, I'll give you my preliminary view on them.  But I will

18   tell you that because these are issues that are -- they're new

19   in the law; they're certainly new to this Court, because I've

20   had very little exposure to these areas.  And, everything is

21   happening on a very hurry-up basis in this case, and there are

22   a few other cases that I have to deal with from time to time,

23   so it's not as if I have a lot of unimpeded time to spend

24   studying these things.  They have -- they have come in kind of

25   a rush.

1          And, I think you will both be better served if you

2    can talk to one another about what restrictions are workable

3    and liveable for you, and what aren't.  I -- I'll decide issues

4    that I have to decide, but my decisions may not be as nuanced

5    as you could both make them if you were to talk to each other

6    about it.  So, I -- I urge you to do that, even after whatever

7    I do today.

8          And in addition, if you would like, I could ask that

9    the matter be assigned to a Magistrate Judge to help you thrash

10   out any unresolved or difficult issues with respect to specific

11   terms.  So, if you want, I will do that.  I think it would be a

12   good idea.

13         Some of our Magistrate Judges are particularly adept

14   at some of these areas, and may be able to help you reach a

15   result that is more workable for both of your clients.  So, be

16   thinking about that.

17         But, on the matters that are before me today, my

18   preliminary view is to agree with Mr. Kellar that the order

19   that Mr. Hotz retrieve materials is unworkable in this case,

20   and needs to be either amended or deleted.  And I am concerned

21   -- so, that's Point One.

22         Point Two is I would like to figure a way to get him

23   back his computer.  I do not feel that at this time this Court

24   will tell Mr. Hotz he can't have any computers -- which is

25   effectively what Sony says -- for a number of different

```
 1  reasons, including the fact that that's utterly, utterly

 2  unenforceable.  So, I want to get him back his computer.

 3              Well, or -- now, what's the current status of it?

 4  Does he still have it?

 5              MR. KELLAR:  Yes.  Today he is scheduled to --

 6              THE COURT:  Today's the day.

 7              MR. KELLAR:  -- turn it in to --

 8              THE COURT:  What I would like to do is figure a

 9  way -- and now, here, my ignorance is going to come into play,

10  but I read what Mr. Kellar wrote about the ten or 20 or 100

11  lines of code that actually are the offending key thing.

12              And what I would like to do is order that that be

13  erased, taken out, whatever, of his computer and his hard

14  drive, but I would also like to make clear that Sony doesn't

15  have right to access other things besides that.  You know, I'm

16  thinking, what if he files his tax returns on his computer?

17  Well, Sony has no business in personal matters like that.

18              So, what I would like to craft is a way to remove

19  from -- I guess it would be -- well, whether it's software or

20  firmware or what, but remove from his device anything to do

21  with the unlawful circumvention activities and devices, but get

22  him back all the rest of it.

23              So, that's what I want to accomplish.  I don't know

24  quite how to say that.  But that's what I would like to

25  achieve.  So, those are the two things that I think really need
```

1    to be altered on the current situation.

2           The balance of it, I've read what you've written.  I

3    -- I am -- I do not agree with Mr. Kellar on many of the other

4    things he says.  But again, Sony's response is, "Well, we can

5    do this and that and the other to tweak it and make it clear,"

6    and apparently you folks -- up until now, it hasn't been

7    possible for you to sit down and talk to each other about

8    actually achieving that.  And I think that needs to be done.

9           So, I'm -- I'm inclined to issue as a -- as a

10   preliminary injunction, something that looks similar to the

11   current TRO with the exception of the retrieving and the

12   impoundment language.

13          So, those are my views, but Mr. Kellar, I know I

14   didn't let you talk at all about this topic the last time we

15   were together.  So I will be happy to hear what you --

16          **MR. KELLAR:**  Thank you, Your Honor.

17          **THE COURT:**  Why don't you come up.

18          **MR. KELLAR:**  Yes, should I come up?  Thank you.

19          I thank you again for taking the time to hold this

20   hearing this morning.

21          First, I would like to state that the reason that we

22   have not been able to come to an agreement on this matter,

23   although Ms. Gaudreau had sent me an e-mail yesterday trying to

24   come to terms with some of the points of the order, is that I

25   have been reacting to some discovery that has been propounded

1  by the Plaintiffs in circumvention or contravention of the

2  Federal Rules of Civil Procedure.

3         They've served my client with several discovery

4  demands, and served eleven subpoenas to third parties on an

5  expedited basis.  And, I have been reacting to that.

6         And, I would ask that this Court order Plaintiffs to

7  withdraw these subpoenas and discovery because no expedited --

8  expedited discovery has been authorized, and because no 26(f)

9  conference has been held.  Therefore, under 26(d)(1), this

10  discovery is premature.

11         **THE COURT:**  Do you want to talk about that first?

12         Is that correct, Mr. Gilliland?

13         **MR. GILLILAND:**  Your Honor, Ms. Gaudreau is in a

14  better position to speak specifically about the discovery.

15         **THE COURT:**  Oh, okay.

16         **MR. GILLILAND:**  But I'll say a few things.  First, we

17  did confer with Mr. Kellar about discovery.  We have filed a

18  request for permission to engage in expedited discovery.

19         We do have a hearing on March 11th, at which the

20  Court said you'd like to have a more -- a fuller factual record

21  regarding Mr. Hotz's connections with California.  So, we have

22  tried to get that process under way, so that the information

23  could be available in advance of that hearing.

24         We asked Mr. Kellar to stipulate to doing this on an

25  expedited basis.  He declined.  Therefore, we served it on

```
 1  regular 30 days' notice for written discovery; and on regular

 2  ten days' notice, subpoenas third parties.

 3          THE COURT:  Well, are you allowed to do that at this

 4  stage?

 5          MR. GILLILAND:  Well, we believe that we did meet and

 6  confer under 26(f), and that we did have such a conference.

 7  And so we think that we are entitled to it, yes.

 8          THE COURT:  Because normally, as you know, we don't

 9  start discovery until after the first status conference.

10          MR. GILLILAND:  Yes, that's right.

11          THE COURT:  Which we haven't had.

12          MR. GILLILAND:  We have not.

13          THE COURT:  All right.  Well, I understand your

14  position.  Let's talk about these other matters first, and then

15  we will circle back to this.

16          MR. GILLILAND:  And we should connect those dots

17  together, as the Court mentioned, with respect to the

18  March 11th hearing.

19          THE COURT:  Right.

20          MR. GILLILAND:  And what we are going to be able to

21  achieve there and what we might not be able to achieve there.

22          THE COURT:  Okay.

23          MR. GILLILAND:  Thank you.

24          MR. KELLAR:  Thank you, Your Honor.

25          With regard to the TRO and the preliminary
```

```
 1  injunction, I would like to point out that the TRO, itself, is
 2  futile.  Under the Federal Rules of Civil Procedure, Rule 65,
 3  temporary restraining orders are to prevent imminent
 4  irreparable harm.
 5          In this instance, any harm that has been suffered is
 6  not -- has already been suffered.  Is not imminent.  And
 7  therefore, a TRO serves no purpose to prevent harm that would
 8  otherwise be suffered without the order.
 9          With regard to that, Plaintiffs -- or -- yeah --
10  Plaintiffs have cited some cases stating that permanent
11  injunctions are authorized to have -- to not only prevent
12  imminent harm, but to send a message to other would-be
13  infringers that flouting the law will not be acceptable.
14  However, they cite cases regarding DVD decryption technology
15  around Year 2000, and that technology has since been exempted
16  from the DMCA by the Library of Congress, because they have
17  found substantial non-infringing use.
18          And, indeed, the DeCSS technology that they cite in
19  their brief that they submitted last night at 11:00 p.m., the
20  technology at issue is now readily available on the Internet,
21  it is legal to possess, and it contains substantial
22  non-infringing uses.
23          I would like to offer the Court a Google search I did
24  for DeCSS download, which shows that there are 75,000 downloads
25  available for DeCSS, the DVD decryption technology.
```

1          **THE COURT:**  But something has happened that has made

2    that legit.  Right?

3          **MR. KELLAR:**  Correct.  The determination by the

4    Library of Congress that it can be used for substantial

5    non-infringing uses.  And this is dealing with the

6    circumvention technology that is only used to get at a

7    copyrighted work.

8          We haven't gotten to the merits of anything on what

9    the uses -- the non-infringing or even circumvention for --

10   that is not in violation of the DMCA uses for the technology at

11   issue in this case.  We haven't gotten to that point yet

12   because jurisdiction is still disputed, and none of the merits

13   have been argued.

14         So, it would be premature to presume that there are

15   no significant non-infringing uses, or that the only possible

16   use for this is to circumvent technological protection measures

17   in violation of the DMCA anti-circumvention provisions.

18         And with regard to that, with regard to the futility

19   of a temporary retraining order, I would like to offer to the

20   Court some news articles that have been posted recently, within

21   the past two days, that demonstrate that the code is being

22   posted not only by news companies, but also by Sony employees,

23   themselves.

24         If I could submit to the Court an article from --

25   from several publications that demonstrate that there are --

1 that the key is continuously posted and reposted by many

2 reputable sources and many people reacting to anything on the

3 Internet.

4    **THE COURT:**  You may submit that.  Have you got copies

5 for counsel?

6    **MR. KELLAR:**  Yes, I do.

7    (Documents handed up to the Court)

8    **THE COURT:**  Thank you.

9    **MR. KELLAR:**  The first item is a Techland blog by

10 *Time Magazine*.  And on the front page you will see that

11 TheKevinButler, who is Sony's spokesperson, posted on his

12 Twitter page the -- one of the codes at issue in this present

13 case.  This person who goes by "TheKevinButler" has over 71,000

14 followers on Twitter.

15    And this article was picked up by *Time Magazine*; by

16 Engadget, the America Online technology website; and by the

17 *International Business Times*.

18    (The Court examines documents)

19    **THE COURT:**  What did you say about Kevin Butler?  You

20 said he was a Sony spokesperson?

21    **MR. KELLAR:**  That's correct.

22    **THE COURT:**  This says he's an invented person.

23    **MR. KELLAR:**  That's how he characterizes himself, as

24 the spokesperson for Sony.

25    **THE COURT:**  It says Kevin Butler is a completely fake

1  persona, invented as an advertising technique.

2         **MR. KELLAR:**  Correct --

3         **THE COURT:**  So it's not a person.

4         **MR. KELLAR:**  Correct that it is an actor, and not an

5  executive for Sony.  He is their promotional spokesperson.

6  Whether or not that's his real name is to be decided.  But, the

7  promotional spokesperson posted the code at issue here.  And it

8  was picked up by *Time Magazine*, who posted the same code.

9         So, while Mr. Hotz is restrained, the code is posted

10 by *Time Magazine*.  And by --

11        **THE COURT:**  Well, you know what this demonstrates is

12 the -- A, the difficulty Sony faces in keeping hold of its

13 material.  And B, a stunning amount of damage can be done by

14 people like your client by letting it out there.

15        So, I -- I take both points from what you've

16 submitted here.  But, to me, if he continues -- if your client

17 continues to send this information out, that continues to do

18 more damage.

19        So let's move along to what he can live with, because

20 there's going to be an order imposed here.

21        **MR. KELLAR:**  Okay.  With regard to the substance of

22 the temporary retraining order, at this point it includes

23 language that prevents him not only from trafficking in

24 circumvention devices related to the PlayStation computer, but

25 it also relates to Mr. Hotz being prevented from trafficking in

 1 any other copyrighted works, access -- circumvention devices

 2 related to other copyrighted works.

 3          **THE COURT:**  Now, they said that they would agree to

 4 limit that to the PS3.

 5          **MR. KELLAR:**  Correct.  Their wording that discusses

 6 compatibility with the PlayStation 3 is likewise overbroad.

 7          A PlayStation 3 is, in fact, a computer.  It plays

 8 DVDs which are compatible with the PlayStation.  It contains

 9 Blu-ray disks that are compatible with the PlayStation.  It

10 will play audio CDs.

11          **THE COURT:**  So, rather than discuss this --

12          **MR. KELLAR:**  Yes.

13          **THE COURT:**  -- at length here, perhaps that's an area

14 that you could sit down with each other and see if there's an

15 agreement you can come to.  Because you're going to be -- your

16 client will be restrained from engaging in circumvention

17 technology, products, services, methods, codes, software, and

18 other technologies that enable unauthorized access to and/or

19 copying of PS3 systems and -- something.

20          So, if what Sony wants is to restrict that to the

21 PS3, which is really what this case appears to me to be -- to

22 the -- to the gaming aspect of the PS3, and if you're saying,

23 well, it's also usable for other things that they don't really

24 care about here, just talk to each other about that.

25          Now, I doubt that he cares a bit about those other

1   things you just listed off here, as far as that goes.  But, if

2   it's a problem, then I'll try to frame it as narrowly as

3   possible.

4          **MR. KELLAR:**  Thank you, Your Honor.  Our concern is

5   that it would effectively restrain exempted circumvention,

6   circumvention activities that are --

7          **THE COURT:**  That are okay.

8          **MR. KELLAR:**  -- explicitly excepted.  Yes.

9          **THE COURT:**  And I don't mean to do that.  So if you

10  can help me out in crafting something that will avoid that,

11  I'll be happy to do it.

12         **MR. KELLAR:**  Thank you, Your Honor.

13         With regard to Point 5 of the restraining order, on

14  Page 3, under the order, Mr. Hotz is restrained from

15  publishing, posting or distributing any information, code,

16  program, instructions, video or other material obtained by

17  circumventing the PlayStation 3 system.

18         An issue with that is circumvention is authorized if

19  it does not access or infringe upon a copyrighted work.

20  Information is not, per se, copyrightable material.  So this is

21  overbroad, in that --

22         **THE COURT:**  Well, on that, Sony responds -- and I'll

23  let you do it when your turn comes.  But they say, "Well, yes,

24  but he's been in there poking around, and these other things

25  that he's learned about make it much easier for other people to

1  do the same poking."

2  So that even if he doesn't give them the forbidden

3  code and they don't have the forbidden code, if he gives them

4  these little road signs that he's found in there, that they can

5  then go figure out the forbidden code on their own much more

6  easily.  And given the conduct of your client thus far, that

7  it's appropriate to enjoin him from doing that.

8  That's what their argument is, I think.

9  **MR. KELLAR:**  Okay.  Well, my argument is counter to

10  that.  That if it isn't protected works under the copyright

11  act, it is exempt from the anti-circumvention provisions.

12  If he were to go behind the scenes of the PlayStation

13  computer and see a statement that Abraham Lincoln was the

14  president during the Civil War, he would be entitled to

15  distribute that information.  If he found information back

16  there that had interesting statements made by Sony about their

17  users, he would be entitled to distribute that information,

18  because if it's not copyrighted, it is not protectable under

19  the DMCA anti-circumvention provisions of 1201.

20  So, in my opinion, that aspect is overbroad.

21  **THE COURT:**  Okay.

22  **MR. KELLAR:**  The -- the same applies to Bullet Point

23  No. 4 which regards, again, information, without respect to the

24  copyright-ability of that information.

25  And finally, with regard to the order of impoundment

1  of --

2           **THE COURT:**  Yeah.

3           **MR. KELLAR:**  Mr. Hotz is agreeable that a deletion of

4  the material at issue is favorable to impoundment of his hard

5  drives, which contain so much other stuff that is protectable

6  for a myriad of reasons.

7           **THE COURT:**  Uh-huh.

8           **MR. KELLAR:**  One thing that I would like to point out

9  is that no determination has been made yet in this case on

10 whether or not any of these uses are fair uses.  Fair use is

11 the protection measure for the First Amendment within copyright

12 law, as was quoted in the *Napster* case.

13          However, when Napster imposed an injunction, they had

14 already made a determination that there were no -- that fair

15 use did not exist in that case.  Whereas in our case, we have

16 not had an opportunity to answer those questions because that

17 would required a general appearance, which, our client

18 maintains he is not subject to jurisdiction here.

19          **THE COURT:**  Okay.  Thank you.

20          **MR. KELLAR:**  Thank you, Your Honor.

21          **THE COURT:**  Thank you.

22          **MR. GILLILAND:**  Good morning, Your Honor.  Jim

23 Gilliland for Sony Computer Entertainment.  I'll just respond

24 briefly to a couple of the points that Mr. Kellar made, and

25 that the Court specifically noted.

 1            With respect to retrieving information from the

 2    Internet, we did not intend that the wording of the temporary

 3    retraining order would require Mr. Hotz to retrieve the

 4    Internet, but rather, if he has in fact, himself, sent the keys

 5    to somebody else, and he knows who has them, then to please get

 6    them back from those people.

 7            **THE COURT:**  Well, you know, these are all new areas.

 8    And we use analogies to help us conceptualize things that are

 9    -- are new to us.  And some of the cases talk about keys,

10    skeleton keys.

11            **MR. GILLILAND:**  Yes.

12            **THE COURT:**  You just used the word "key."  And if

13    there were a key he'd given to somebody, why, I might agree

14    with you that getting it back would make sense.  But this is

15    information.  And it's out there.  And if he were to say -- and

16    the people to whom he's distributed it got it on their

17    computer, in little bits and bytes, and electronic data.  It

18    can't be -- it's information.  It can't be retrieved.  It's

19    just not practical.

20            What would they do?  Would they Xerox it and mail it

21    back to him?  Or what's the --

22            **MR. GILLILAND:**  No, we would ask that they also

23    delete it from their computers.

24            **THE COURT:**  Well, that's a little bit much, don't you

25    think?

1      **MR. GILLILAND:**  That -- it is a difficult thing to

2  ask in the context of information, yes, Your Honor.  But, we

3  agree that it is not Mr. Hotz's responsibility to --

4      **THE COURT:**  To call back the Internet?

5      **MR. GILLILAND:**  That's our job.  We're trying to do

6  it.  We are sending takedown notices.  We are getting

7  criticized in the press for doing so.  But, this is the work

8  that we must do because of the -- the problem that Mr. Hotz has

9  unleashed.

10     **THE COURT:**  Well, the other thing is you probably

11  want to have your technical wizards figuring out, on a

12  going-forward basis, other ways to design your business model.

13  Because this is going to keep happening.

14     **MR. GILLILAND:**  Yes.  That would be a good thing to

15  do.  But, it would have to be done, of course, without

16  impairing the ability of the 40,000 -- 40 million current

17  PlayStation owners to utilize their PS3.  So it's -- it's not a

18  trivial exercise.

19     **THE COURT:**  I understand.

20     **MR. GILLILAND:**  With respect to the definition of

21  copyright works, we have, in fact, suggested a limitation.

22  This is the first time we've heard from Mr. Kellar that it also

23  is unacceptable to him.

24     We're perfectly willing to sit down and to try to

25  work this out.  We don't care about whether Mr. Hotz is

1    continuing to jailbreak his iPhone.  That's not our business.

2           At one point in the early history of this lawsuit, it

3    was assigned for an hour to Magistrate Judge Spero.  And, if --

4    we'd be happy to accept the Court's suggestion that it be

5    referred to a Magistrate, particularly if it's already been in

6    his court for an hour, to help us work out these details.  That

7    makes perfect sense.

8           And finally, with respect to the impoundment, it's

9    not accurate to say that this is just 100 kilobytes of code.

10   The key, itself, is just 100 kilobytes, perhaps.  But there was

11   also the entire jailbreak zip file, all of the software that

12   Mr. Hotz created that allows you to take the key and load it

13   into your PlayStation, and then you run pirated games on the

14   PlayStation.

15          So, we're happy to find some -- we don't want it

16   erased, because we do want to be able to look at it at some --

17   Mr. Hotz undoubtedly will have to decrypt it so that the

18   parties can examine it, but it is necessary to look at that

19   code, and present it to the Court so we can prove what he has

20   done.

21          But, we do think it should be partitioned, segmented

22   off, put into escrow -- not escrow, but impounded in our law

23   office or in Iron Mountain or someplace like that.  The Court,

24   what we will -- hopefully Mr. Hotz will agree that we can now

25   look at it and see what he has done.

```
 1          But if not, we will come back to this Court or to

 2   Magistrate Judge Spero or whomever you send us to, to get

 3   permission to do that.  And then, he can keep his computer.

 4   Take it off his -- but we need everything related to Sony and

 5   the PlayStation.

 6          Not just the key, but all the software, all the zip

 7   files, all the e-mail correspondence back and forth, anything

 8   that relates to Sony PlayStation should be segmented, and then

 9   he can use the -- taken off his computer, put somewhere else,

10   and then he can use his computer for his business.  We don't

11   mean to impair his ability to earn a living.

12          And we're happy to work out the specifics of all of

13   that with counsel, or through the Magistrate Judge, if

14   necessary.

15          THE COURT:  All right.

16          MR. GILLILAND:  It is -- with respect to the First

17   Amendment issues that Mr. Kellar raised, they have been

18   addressed repeatedly, including by the Second Circuit in the

19   Corley case, including by this Court in the 321 Studios case.

20          THE COURT:  Yes, but evidently, certainly, what I

21   said wasn't the last word, and I don't -- things move.  Things

22   change.

23          MR. GILLILAND:  The way the DMCA is written, Your

24   Honor, the Library of Congress is given the opportunity once

25   every few years to decide what technology should no longer be
```

1  covered.  In their wisdom, they decided that the iPhone can be

2  jailbroken.  And they have decided that the DeCSS can be used

3  for individual threats.

4          That still does not mean that you can publish it to

5  somebody else, in either instance.  But --

6          **THE COURT:**  Oh, really?

7          **MR. GILLILAND:**  Correct.  You still cannot traffic in

8  these.  You can use them for your own personal use.

9          So you can now, perhaps partly in response to what

10  Mr. Hotz did, you can jailbreak your iPhone, and you can put on

11  your own iPhone whatever you want to do.  You void the

12  warranty, you may crash your whole iPhone, but that's your

13  fault.

14          But, you still cannot publish that to somebody else.

15  That's a different issue.

16          **THE COURT:**  The last time I looked at all this, it

17  had to do with DVDs.

18          **MR. GILLILAND:**  Correct.

19          **THE COURT:**  So, go back to the --

20          **MR. GILLILAND:**  The DeCSS.

21          **THE COURT:**  The DeCSS.  They have said it's okay --

22          **MR. GILLILAND:**  For your own personal use.

23          **THE COURT:**  It's okay for your own personal use to do

24  what?

25          **MR. GILLILAND:**  To circumvent the access control to

1    make a backup copy.

2              **THE COURT:**  How do you know how to do that?

3              **MR. GILLILAND:**  I don't know.  Well, you use the

4    DeCSS software that's out there, and that was the subject of

5    the *Corley* and *Reimerdes* and the *321 Studios* cases.  You

6    download that software --

7              **THE COURT:**  It's okay to use it, but it's not okay

8    for somebody to write it?

9              **MR. GILLILAND:**  Presumably it's okay to write it as

10   well.  But now the industry has moved on to different

11   technology, as you suggest may happen in the video gaming

12   industry as well.

13             But for -- at this point in history, the

14   technological protection measures in the video game consoles

15   are still protected by the DMCA.  And the conduct that Mr. Hotz

16   engaged in is still forbidden by the DMCA.

17             I'm happy to address the March 11th hearing if you

18   want to, or any other questions that the Court might have for

19   me.

20             **THE COURT:**  Well, I had two goals for today.  One is

21   to clean up the existing TRO.

22             And two is to determine -- well, I think -- what I

23   would like to do, if I can, is just convert it to the

24   preliminary injunction so we don't have to think about the

25   preliminary injunction at least until March 11th, when you all

1  come back to figure out if we actually have jurisdiction to do

2  any of the things that I have been doing right along.

3          **MR. GILLILAND:**  Well, that's certainly acceptable to

4  us, of course, Your Honor.

5          **THE COURT:**  Is that okay with you, to handle it that

6  way so we don't have to have a separate hearing on the TRO

7  again?

8          **MR. KELLAR:**  If we can reach an agreement with

9  opposing counsel regarding the scope of the language, then yes.

10          **THE COURT:**  Well, that's -- that's not a yes.

11  Because I don't know what you will agree to.  I just -- I'll

12  tell you what, what I'm going to do is tell you all that I -- I

13  do intend to issue a preliminary injunction in the same form as

14  the temporary restraining order, but with some changes.

15          One is, the retrieval language is just out.  Because

16  that's completely unworkable.  Two is, the impoundment order is

17  limited to Mr. Hotz providing to Sony his computer, to allow

18  them to retrieve and segregate the materials with respect to

19  the code that we've been -- the keys we've been talking about,

20  and the attendant materials.

21          And whether they get isolated -- whether they get

22  moved on to a little zip disk and put into a safe or what, I

23  don't know, but somehow to isolate that information, make it

24  inaccessible to Mr. Hotz for now, and give him back his

25  computer.

1        **MR. GILLILAND:**  Your Honor, if I may interrupt, we

2   would ask that that also include the PlayStation 3 consoles,

3   themselves, at least temporarily, so we can see if they have

4   been modified or changed in any way, and then we will give

5   those back to him as well.

6        **THE COURT:**  The consoles, themselves?

7        **MR. GILLILAND:**  Yes.  To see if he's had to change

8   anything on the inside of the PlayStation to --

9        **THE COURT:**  You mean, like, pull a wire or something?

10       **MR. GILLILAND:**  No, no, alter the code, the -- either

11   the -- the lock-and-key approach, you have to have both a lock

12   and a key.  So, either alter the operating system software

13   inside the PlayStation, or any other modifications he may --

14       **THE COURT:**  Is that previously in here?

15       **MR. GILLILAND:**  It says "storage devices and

16   computers."  It doesn't specifically identify the PlayStation.

17   But as Mr. Kellar noted, the PlayStation is a computer.

18       And, again, we don't want -- we don't need to keep

19   his PlayStations.  If he wants to have them back, that's fine.

20   We just want to inspect them, figure out if he's made any

21   changes, and then give them back.

22       **THE COURT:**  What do you say to that?

23       **MR. KELLAR:**  I have a big problem with that, Your

24   Honor.  May I approach?

25       **THE COURT:**  Yeah, sure.  You could actually both

1   stand at the podium at the same time, if you want.

2          MR. KELLAR:  Thank you.

3          With regard to allowing Sony access to my client's

4   computer to inspect all files to find out which ones are and

5   are not the circumvention devices again raises the same issue

6   of impounding Mr. Hotz's privileged, confidential, and

7   otherwise private information on his computers.

8          THE COURT:  And, you know why that issue comes up?

9   Because that's where he did what he did.  And for present

10  purposes, anyway, what he did was not all right.  So, --

11         MR. KELLAR:  That's correct, Your Honor.

12         THE COURT:  -- that's the breaks.

13         MR. KELLAR:  However, the TRO already states that

14  Mr. Hotz is to preserve and not destroy any records or

15  documents in whatever format relating to the circumvention

16  devices, and Mr. Gilliland has -- or Sony's counsel has

17  demonstrated no risk of spoliation, of covering tracks, of any

18  illicit activity involving tampering with evidence after

19  receiving notice of this suit.

20         THE COURT:  Oh, I don't think that's right.  I got

21  something just yesterday or the day before that he's posted --

22  posted things on the Internet that is in direct violation of

23  the order.

24         MR. KELLAR:  It is not correct that he posted things

25  in direct violation of the order.  He posted a link to

1   PlayStation's own website.

2          And, on PlayStation's own website, a demonstrative of

3   this is someone posted -- in fact, I must, prior to answering

4   this, object to that submitted evidence that was received last

5   night at 11:00 p.m., as hearsay.  I was unable to find that

6   same record on the Sony website.

7          And, I have no way, other than the declaration of

8   Ms. Gaudreau, to authenticate whether that was Mr. Hotz that

9   provided that link, whether or not that was actually a comment

10  made on Sony's own website, and whether or not that is the code

11  at issue.

12          So that is still disputed, Your Honor.  And again, no

13  risk of spoliation has been shown.

14          **THE COURT:**  Okay.  Well, I'm not going to order that

15  the PlayStations, themselves, be impounded at this time.

16  That's something that on a going-forward basis, if you can

17  persuade me that that's a necessary step to find out what

18  happened here, why, so be it.

19          But the risk that you've articulated and the concern

20  you seem to have mostly is the codes that he's been sending

21  out, so that's what I'll give you a right to look at.

22          **MR. GILLILAND:**  Thank Your Honor.  We have also, as

23  part of the discovery, sent out a request for inspection.

24          **THE COURT:**  Yeah, that may be the way to deal with

25  that.

1          Now, with respect to discovery, which is where we

2     kind of started this discussion this morning, I agree with

3     Mr. Kellar that it's early for discovery.  I don't recall

4     having given any particular leave to do this discovery.

5          The issue that I think -- and I don't know what it is

6     you're talking about, but the one thing that I think there is

7     some immediate need to do is jurisdictional discovery.

8               **MR. GILLILAND:**  Right.

9               **THE COURT:**  So if that's what it is, --

10              **MR. GILLILAND:**  Yes.

11              **THE COURT:**  -- then I'm less concerned about it.

12    Because what we have scheduled is this -- we have it for

13    March 11th.  And if that date continues to work, fine.  And if

14    you want a different date, let me know.

15         But, what we have scheduled for March 11th is the

16    jurisdictional -- is presumably -- you have made a motion, I

17    think, to dismiss on jurisdictional grounds.  Right?

18              **MR. KELLAR:**  That's correct.

19              **THE COURT:**  So, we're going to be talking about that.

20    So if you have targeted jurisdictional discovery, that's one

21    thing.  Anything else is --

22              **MR. GILLILAND:**  That's what this was.  It was only

23    jurisdictional discovery.  Contacts with California, money

24    coming in and out of California.

25         Again, Ms. Gaudreau --

1          **THE COURT:**  Okay, well, what I'll --

2          **MS. GAUDREAU:**  But, Your Honor, I was going to say

3    that if -- if this -- if the Court now enters this as a

4    preliminary injunction, and if Mr. Kellar would prefer, we can

5    have the motion-to-dismiss hearing a little bit later, and the

6    discovery can occur on a 30-day basis.

7          It's -- what we were trying to conform to was having

8    the preliminary injunction hearing and the motion to dismiss

9    hearing simultaneously on March 11th.

10         **THE COURT:**  Uh-huh.

11         **MR. GILLILAND:**  That could not have been done on a

12   more full factual record, without some jurisdictional

13   discovery.

14         **THE COURT:**  Well, do you want to do that?  Because

15   that might make sense.  Everything has been so hurry-up here,

16   and I'm very concerned that mistakes will be made because of

17   that.

18         So, if you want to move that hearing on the

19   jurisdictional question -- which in my mind is a really key

20   issue here -- out, and get a better record, that's okay with

21   me.

22         **MR. KELLAR:**  The discovery that has currently been

23   propounded or set forth by Plaintiff is frightening in its

24   scope.  It is beyond any reasonable limit to personal

25   jurisdiction discovery.

1           Among other things, it seeks to identify every

2    individual who has made a comment on Mr. Hotz' YouTube page,

3    and their identifying information.  Every single transaction

4    that Mr. Hotz has made or received via his PayPal account.

5    Every single contact with regard to his Twitter account.

6           It also seeks discovery for the unnamed, unserved

7    Defendants, with regard to the same type of personal

8    information.

9           **THE COURT:**  All right.  It seems to me like you

10   probably have some perfectly good objections to some of that as

11   not being targeted jurisdictional discovery.  So what I'm going

12   to do is ask that you -- well, I will order that Judge Spero,

13   if -- he's as good as anybody else for this.  I mean, he's an

14   excellent one.

15          So unless there's an objection to him hearing this,

16   I'll order that you consult with Judge Spero on the discovery

17   issues.  I -- I will allow -- and I would ask that he figure

18   out what it is -- allow targeted preliminary discovery on the

19   jurisdictional question, so that we have a full record on the

20   jurisdictional issues, on a going-forward basis.

21          I will ask that he work with you on language that

22   will -- that will tailor the impoundment order in the existing

23   TRO which will now become the preliminary injunction up until

24   such time as we have the jurisdictional hearing, tailor it so

25   that the information retrieved is only information related to

1  the subject matter of this lawsuit, which is the hacking of the

2  PS3.  And -- and that material can be isolated and retrieved.

3          And they're going to have to search the computer to

4  find it, but then anything else would be uncopied -- would not

5  be copied by Sony or kept by Sony in any way, and would be left

6  on the computer, and he would get it back.

7          **MR. KELLAR:**  It may still be observed by Sony.

8          **THE COURT:**  I'm afraid that may happen.  I mean, we

9  run into that every day of the week when people come in with

10 search warrants and other things, if there's, for example,

11 pornography on the computer.  There may be tax returns and

12 pornography.  Well, the -- or child porn, for example.

13         So what they have do is look and find the stuff, and

14 then they isolate the things that they're entitled to, and

15 don't keep the things they're not.

16         **MR. KELLAR:**  Your Honor, we certainly are not dealing

17 with child pornography in this issue.  And, probable cause is

18 required for such search warrants.

19         **THE COURT:**  Right.  And if there were child

20 pornography -- I'm just using that as an example, because

21 that's what we see all the time.  If it's there, then that's

22 the probable cause.

23         Well, here, I find probable cause that your client

24 has got these things on his computer.  It's not child porn.  I

25 didn't mean to suggest that it was.  But, it's a problem when

```
 1   more than one thing is kept on a computer.  And so, that's just
 2   the way -- the way it works.
 3           But I will -- I will make sure, the order will be --
 4   is -- and you can refine the language -- that Sony's only
 5   entitled to isolate and copy and segregate, however you
 6   mechanically do that, the information on the computer that
 7   relates to the hacking of the PS3.  That's the subject of this
 8   lawsuit.
 9           MR. KELLAR:  Thank you, Your Honor.
10           Well, with regard to the subpoenas that have
11   currently been issued and are demanded to be returned within
12   ten days, which is four days less than the usual minimum of 14
13   days, those are still out there.  They have been sent to the
14   third parties by Plaintiff, on their own expedited schedule.
15           So, while we may meet with the Magistrate Judge
16   regarding that, that discovery that is overbroad is --
17           THE COURT:  Well, it's premature to be doing that.
18   Isn't it?
19           MR. GILLILAND:  Your Honor, there are two general
20   characteristics of the third parties that we have sent
21   subpoenas to.
22           THE COURT:  Uh-huh.
23           MR. GILLILAND:  One are the third parties that host
24   the websites on which Mr. Hotz had posted his jailbreak
25   software.  And it's with those hosting sites that we are able
```

1    to determine whether those were downloaded from Mr. Hotz into

2    the Northern District of California.  Mr. Hotz can't tell us

3    who downloaded it.  Only the third-party hosts can tell us.

4           The second general category is the Google, Twitter,

5    PayPal, that we discussed initially.  We believe that we are

6    going to be able to show that money was passing back and forth

7    through that PayPal account, to Mr. Hotz, in relation to these

8    downloads.

9           **THE COURT:**  Okay, all right.  Well, then, I'm going

10   to order right now that those subpoenas are quashed.  Or,

11   postponed.  I mean, they ought not -- they're not returnable.

12          **MR. GILLILAND:**  Okay.

13          **THE COURT:**  Yet.  And, you should discuss all that

14   with Judge Spero.

15          **MR. GILLILAND:**  Yes.

16          **THE COURT:**  Because there may be some -- that sounds

17   to me like way more than you're entitled to right now, from

18   just -- from the way you've described it.  But there may be

19   some parts of that that you would be entitled to.

20          But I think Mr. Kellar is right, they ought not be

21   required to turn around that information until there's been an

22   analysis of what's --

23          **MR. GILLILAND:**  And we will take the responsibility

24   of informing them of the Court's ruling on that.

25          **THE COURT:**  Okay.

1          **MR. GILLILAND:**  And then, we will go to Judge Spero

2     and we'll work that out.

3          **THE COURT:**  Okay.

4          **MR. GILLILAND:**  And again, this is all presumed on

5     the notion that we are going to have a hearing on March 11th.

6     But --

7          **THE COURT:**  Right.  Now, do you want to move the

8     hearing, then, and slow down some of this?

9          **MR. KELLAR:**  I would like -- I don't know what my

10    time frames would be like --

11         **THE COURT:**  Uh-huh.

12         **MR. KELLAR:**  -- with this.  But, if it is necessary

13    to be able to adequately comply with jurisdictional discovery

14    that we will agree with the Magistrate Judge to its scope, then

15    delaying for not an unreasonable amount of time --

16         **THE COURT:**  Yeah.

17         **MR. KELLAR:**  -- may be --

18         **THE COURT:**  I'll tell you what, we'll leave it on

19    March 11th now, because we've got it on calendar.  But, go talk

20    to Judge Spero.  And, I'm willing to move it if it will make

21    your lives easier in some way.

22         **MR. KELLAR:**  Further to the subpoenas is a demand for

23    taking Mr. Hotz's deposition next Tuesday, February 15th.

24         **THE COURT:**  No, that's quashed.

25         **MR. GILLILAND:**  Again, we will work all this out.

```
 1              THE COURT:  Unordered, or something.  But until all

 2    that --

 3              MR. KELLAR:  Can we agree to the same for the demand

 4    for inspection of his computer --

 5              THE COURT:  Yes.

 6              MR. KELLAR:  -- and production of documents and

 7    interrogatories they served on Mr. Hotz?

 8              THE COURT:  Yes.  The only -- all of that needs to

 9    run through the Magistrate Judge.

10              But the thing that isn't suspended is the impoundment

11    order.  But, you just need to figure out exactly how that's to

12    happen.

13              MR. KELLAR:  The impoundment is set to go into effect

14    today.

15              THE COURT:  Well --

16              MR. KELLAR:  May we have a reasonable amount of time

17    to discuss the logistics of that with opposing counsel, and

18    afford Mr. Hotz an opportunity to deliver the devices?

19              Because Mr. Hotz lives in New Jersey, and Sony --

20    Sony Computer Entertainment America is headquartered in Foster

21    City.  So some time --

22              THE COURT:  I thought I changed that so --

23              MR. GILLILAND:  You did, Your Honor.

24              MR. KELLAR:  You changed it to Trenton, New Jersey.

25    Mr. Hotz does not currently have a car, and Trenton is eighty
```

1  miles from his house.  Opposing counsel has tried to work with

2  me on that, because apparently they have an office ten miles

3  away from Mr. Hotz's residence.

4          **THE COURT:**  Well, I didn't even know where he lived.

5  But, then, everything should be changed to that office.

6          And if you want to go get it, maybe you can send your

7  techies over to his house, and do it all at his house.  Do it

8  however it works best.

9          But if it hasn't been explicitly said, I will say it

10  now.  He's not to delete, destroy, change, modify anything, any

11  of those files.

12          **MR. KELLAR:**  Yes, Your Honor.

13          **THE COURT:**  If that happens, then there's just going

14  to be big problems ahead.  But, yes, work together and figure

15  out how that should happen.

16          **MR. KELLAR:**  Thank you, Your Honor.

17          I just want to close by going on the record saying

18  that Plaintiff does not make the Sony PlayStation.  Sony

19  Computer Entertainment, Incorporated, the Japanese company,

20  makes the PlayStation.

21          I have asserted as much in my motion to dismiss.

22          **THE COURT:**  Do you want me to do something about that

23  now?

24          **MR. KELLAR:**  No.  I -- I felt it should be said in

25  open court, with opposing counsel here.

1          **THE COURT:**  Okay.  Well, you did.  All right.  Thank

2    you, thank you very much.

3          And, Tracy, I'll ask that you let Judge Spero know

4    that we've made this reference to him.

5          And you folks might want to go down -- he's on the

6    15th floor -- and just check in with him, and figure out about

7    scheduling, when -- how he wants to handle it.

8          I frankly don't know if he's here today, but you can

9    check with his staff.

10         **MR. GILLILAND:**  Happy to do that.  May I say one last

11   thing, Your Honor?

12         **THE COURT:**  Sure.

13         **MR. GILLILAND:**  I would like to say thank you to you

14   and your staff for all the time you've devoted to this matter.

15   I appreciate it.

16         **THE COURT:**  Oh, no problem.  Thank you.

17         **MR. KELLAR:**  Thank you, Your Honor.

18         (Proceedings concluded)

19

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C 11-167 SI, Sony Computer Entertainment America LLC v. George Hotz, et al., were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.


_____/s/  Belle Ball_____

Belle Ball, CSR 8785, RMR, CRR

Friday, February 11, 2011