February 28, 2011

**VIA HAND DELIVERY AND EMAIL**
**AT KAREN_HOM@CAND.USCOURTS.GOV**

Magistrate Judge Joseph C. Spero
United States District Court
Northern District of California
Courtroom A, 15th Floor
450 Golden Gate Avenue
San Francisco, CA  94102

      Re:    *Sony Computer Entertainment America LLC v. Hotz, et al.*,
                Case No. C-11-00167 (JCS) SI (N.D. Cal)

Dear Judge Spero:

      Plaintiff Sony Computer Entertainment America LLC ("SCEA") and Defendant George Hotz respectfully submit this joint letter regarding a dispute relating to impoundment of Mr. Hotz's storage devices and the protocol for compliance with Judge Illston's Impoundment Order of February 14, 2011 [Docket No. 79].

**A.**     **Background**

      Pursuant to the Court's Order, the parties and the third party neutral are directed to work together to develop a protocol for the isolation, segregation and removal of information on the storage devices related to the circumvention of the technological protection measures in the PlayStation®3 computer entertainment system ("PS3 System").  Moreover, this Court ordered that the costs and fees are to be split evenly between the parties.   The parties jointly retained The Intelligence Group ("TIG") as the third party neutral, and Mr. Hotz delivered two hard drives and a calculator to TIG's facility in New Jersey for impoundment.

      On February 25, 2011, at approximately 8:00 a.m., counsel for the parties participated in a conference call with TIG to discuss a protocol for "isolating, segregating and/or removing the information on those devices related to defendant's circumvention of the technology protection measures in the PS3 system."  The Court ordered date for the third party neutral to implement its protocol is today, February 28, 2011.  The parties are unable to reach agreement on the impoundment protocol and have set forth their respective positions below.

**B.     Mr. Hotz's Position**

   **1.   The Impounded Drives Should Remain Impounded With The Neutral**

      Mr. Hotz's storage devices containing circumvention devices are already impounded with the neutral vendor, TIG.  Throughout the impoundment protocol development, SCEA has attempted to turn impoundment into inspection.  SCEA is not entitled to inspect the impounded drives under the impoundment order, nor is it allowed to create and preserve additional copies of the impounded drives, but this is precisely what it seeks to do.

      Mr. Hotz proposes that the storage devices at issue, already impounded with TIG, remain impounded until the impoundment order is lifted or the Court otherwise directs.  Having the drives remain impounded impounds the circumvention devices, and information related thereto which is the goal of the impoundment order.  Further, having the drives remain impounded, and not searched or extracted, serves to truly preserve the drives as they existed at the time of impoundment.  The drives have already been photographed and a chain of custody has been established by TIG at the time of impoundment.  *See* Exhibit 3.  In short Mr. Hotz requests the initial impoundment order under the TRO stand, which is in fact more broad than the modified impoundment order of Docket No 79.  [*See* Docket No. 50].

      TIG's process contemplates making a complete, backup copy of Mr. Hotz's storage devices.  That backup would then be fully indexed and searched to find all impoundable material.  Mr. Hotz did not have any concept of the highly invasive nature of this search procedure prior to Friday morning.  Mr. Hotz objects to and does not consent to this invasive search and indexing proposed by the vendor.  Further, counsel for SCEA has notified counsel for Mr. Hotz their intention to obtain an agreement or order to preserve those backup copies of Mr. Hotz's drives, something Mr. Hotz does not agree to.

      The purpose of the isolation and removal aspect of the impoundment order was to allow Mr. Hotz to eventually have his property returned to him once the alleged circumvention devices were removed.  Now that Mr. Hotz knows of the invasive form that the isolation and removal process will take, Mr. Hotz consents that in lieu of removal of the offending information and return of the hard drives, his hard drives may remain in the possession of the neutral until the Court orders otherwise.  This was the initial scope of impoundment under the TRO.  [Docket No. 50]

      While Mr. Hotz would like his hard drives returned to him, in order to avoid the invasive search proposed by the vendor, he will agree that the hard drives will remain in the neutral's possession until the Court orders otherwise.  Mr. Hotz also agrees to demonstrate to the third party neutral that the circumvention devices at issue are located on the impounded drives.

      Counsel for Mr. Hotz presented this proposal to SCEA's counsel.  It was rejected.

The purpose of an impoundment order, such as this, is to keep offending materials from the public. Leaving the hard drives in the neutral's custody, without having the neutral copying and indexing/searching the drives achieves the same result.

### 2. Impounded Drives Are Not Needed For Jurisdictional Discovery

SCEA argues that it has a need for jurisdictional discovery, and that it intends to seek an order to inspect the drives for jurisdictional evidence. SCEA's inspection demands relating to the impounded drives were withdrawn. [Docket No. 85, p. 9.] SCEA has not sought an order for inspection, and more importantly, SCEA has not obtained an order for inspection. Further, SCEA has no reason to believe the impounded drives contain any documents responsive to jurisdictional discovery. The joint letter does **not** state that Mr. Hotz requires the impounded drives to respond to jurisdictional discovery. [Docket No. 85 p. 5-6.] Having now reviewed the discovery requests propounded by SCEA, it is clear that the impounded drives are not necessary to respond to SCEA's jurisdictional discovery.

### 3. SCEA's Requested Relief Is Beyond The Scope This Letter Motion

SCEA's final paragraph of requested relief is beyond the scope of this letter motion. It seeks additional discovery from Mr. Hotz. The USB Drive from the Youtube video is irrelevant to this motion, and in any event was wiped prior to the litigation. Further, Mr. Hotz was already ordered to provide all storage devices, remote or otherwise, containing the circumvention devices to the neutral and has done so. An award of fees and costs for this motion is not appropriate.

### 4. Relief Requested By Mr. Hotz

Respectfully, Mr. Hotz requests that this Court modify its Order to state that the hard drive will remain impounded in the neutral's possession and that because the impounded drives are not being returned to Mr. Hotz, no creation and preservation of additional images of the drives need be performed and that no search or extraction there from is necessary.

### C.    SCEA's Position

At every turn, Mr. Hotz has attempted to avoid impoundment and the preservation of key evidence in this case. Initially, Mr. Hotz sought to avoid impoundment altogether. Then, he sought modification of the impoundment order, objecting on privacy grounds and complaining that he needed his computers promptly returned to him for his work. Judge Illston modified the impoundment order to address Mr. Hotz's concerns, referred the parties to this Court to work out the logistics, and required that the storage devices be returned to Mr. Hotz after segregation and removal of the information from the devices.

Specifically, Judge Illston ordered that Mr. Hotz's storage devices be delivered for the purpose of "isolating, segregating and/or removing the information on those devices related to defendant's circumvention of the technology protection measures in the PS3 System" and returned to him after the infringing material has been removed. (Docket No. 79) In his latest

proposal to this Court, Mr. Hotz is attempting to yet again alter Judge Illston's modified impoundment order, one that he sought and is bound by.

This Court ordered the parties to select a third party neutral to determine and execute protocols for impoundment.  Now, Mr. Hotz refuses to comply with Judge Illston's order or agree to the basic protocol necessary for impoundment and preservation of evidence.  Mr. Hotz unequivocally objects to having his impounded devices imaged and properly analyzed by TIG, the third party neutral which he jointly selected.  TIG has certified that it cannot proceed in the manner that Mr. Hotz requires because to do so would violate the basic standards of forensic analysis.  *See* Exhibit 1 ("Second TIG Certification").

SCEA's objective here is two-fold:  (1) To ensure that impoundment is completed in a forensically sound manner; and (2) To guarantee that the impounded storage devices – which contain key evidence directly relevant to the issues of this case – be preserved for the duration of the lawsuit.  Mr. Hotz's vehement objections to this preservation are disconcerting to say the least.

### 1. Factual Background

SCEA's position on the impoundment protocol has been consistent and comports with basic forensic guidelines.  SCEA requires that images of each impounded storage device – in both the encrypted (as delivered to TIG) and decrypted forms – be created and preserved by TIG.  Imaging of the storage devices is standard forensic procedure.  *See* Exhibit A to Exhibit 1 ("First TIG Certification"), ¶5, and Exhibit 1, ¶¶5-7;11-13.  Mr. Hotz now refuses any such imaging, contending that the basic forensic analysis required here is "highly invasive."

Initially, during the parties' teleconference with TIG, counsel for Mr. Hotz agreed to the imaging of the decrypted storage devices on the condition that any such images be "wiped" after the circumvention material had been segregated and removed from the original devices.  He would not agree to any imaging of the encrypted storage devices as originally delivered to TIG.  Counsel for SCEA disagreed, stating that images of the storage devices (both encrypted and decrypted) must be preserved for the duration of the lawsuit, not only to ensure the forensic integrity of the impoundment procedure, but also for evidentiary purposes and for any potential discovery permitted by the Court.  Counsel for SCEA further explained that if the images are wiped after removal of the circumvention devices and data related thereto, no one, including Mr. Hotz, will have a forensically intact copy of his storage devices – key evidence in this case – as they originally existed.  *See* Exhibit 2 (February 25, 2011 emails among counsel and TIG).  Counsel for SCEA also directed the parties to the Court's evidentiary preservation requirements as set forth in the TRO and Preliminary Injunction.  *See id*; Docket Nos. 50, 84.

Several hours after the teleconference, counsel for Mr. Hotz contacted counsel for SCEA to inform them that Mr. Hotz would not agree to *any* imaging of the storage devices.  Instead, Mr. Hotz proposed that he go to TIG and decrypt the storage devices using the original devices,

his own computer and keyboard. Mr. Hotz offered to then show TIG the circumvention devices and data related thereto contained on the storage devices using his computer. Additionally, despite having previously represented to Judge Illston that he needed these devices for his work, Mr. Hotz now has offered to leave his storage devices with TIG for the duration of the lawsuit in an attempt to avoid the imaging of those devices.[1] Mr. Hotz also proposes that he provide a declaration attesting that the impounded storage devices are the only storage devices that contain any devices or data relating to circumvention of the PS3 System.

In relation to its discussions with the parties, on February 26, 2011, TIG issued a certification regarding impoundment of the storage devices. *See* Exhibit A to Exhibit 1. Because Mr. Hotz's counsel would not agree to preservation (arguing that it was unnecessary for impoundment and only related to discovery), TIG did not include all preservation requirements in this certification. *See* Exhibit 1, ¶8; Exhibit 3 (February 26, 2011 email from TIG to counsel, noting that preservation requirements were the "norm" but not agreed upon by Mr. Hotz).

After Mr. Hotz refused to allow for any imaging of the storage devices, TIG issued a second certification on February 27, 2011 (Exhibit 1). This certification states in no uncertain terms that Mr. Hotz's proposal is unacceptable to TIG and violates basic forensic standards. Exhibit 1, ¶¶3-15. This certification also lays out TIG's procedures for the protocol and confirms the need to create images of both the encrypted and decrypted storage devices before any analysis can be conducted. *See* Exhibit 1, ¶¶5-8. In addition to the certification, TIG informed Mr. Hotz's counsel that, contrary to his statements, the ordered impoundment does require a forensic examination.[2] Exhibit 4 (February 26, 2011 email from TIG to counsel for Mr. Hotz).

## 2. The Creation and Preservation of Images Of The Storage Devices Is Essential To The Proper Impoundment and Preservation of Evidence

Proper impoundment and preservation protocols require that two images of both the encrypted and decrypted forms of Mr. Hotz's storage devices be created. The purpose of creating these images is to maintain one pristine copy and another to be used for analysis.

---

[1] Both TIG and SCEA independently offered to provide Mr. Hotz with the work related data on his storage devices. He rejected both offers.

[2] TIG's Director of Forensics and Security specifically stated: "I am being tasked to search for, and locate data on a hard drive, even data that m[a]y have been deleted using standard forensic techniques. My review of the Court Order does not indicate that your client has sole responsibility to search for and 'point out' the Circumvention devices and supervise the deletion. Rather, it is my reading that I, as the independent third party, am responsible for making that determination and then removing the data from the original hard drive." *See* Exhibit 4.

Indeed, as TIG explains: *"Forensic examinations are never conducted on an original media, device or drive."* See Exhibit A to Exhibit 1, ¶5; *see also* Exhibit 1, ¶15. This is so because any searches or access to data on the original storage devices can alter the evidence contained therein. Exhibit 1 at ¶11. This is also done in the event that the original hard drive fails during examination of the media; if that happens, no image will have been maintained ahead of time and the evidence is completely lost. It is thus essential that forensically sound copies be made at the outset to ensure that the authenticity of the evidence can be established later on. Simply put, imaging is necessary to prevent any spoliation of evidence.

Both TIG and SCEA require that images of the decrypted storage devices be taken prior to any analysis. Mr. Hotz refuses to agree to this imaging, stating that he will not perform the decryption necessary to allow TIG to image the storage devices, access their content, and perform the ordered impoundment. Exhibit 1 at ¶13. Accordingly, SCEA requests that this Court order: (1) the creation by TIG of two images of each of the decrypted storage devices in a forensically sound manner; (2) TIG to maintain in a secure vault for preservation purposes one of those images; and (3) Mr. Hotz to provide TIG the tools and keys necessary to decrypt the impounded storage devices and any protected files therein.

With respect to the original encrypted storage devices, TIG confirms that imaging is necessary for its use in the impoundment procedure and for the preservation of evidence. Exhibit 1, ¶6. In its recommended protocol, TIG intends to use an image of the encrypted storage device in the "un-encryption step." *Id*. However, TIG believes that it does not have the authority to make a second image of the encrypted storage device for the purpose of preserving relevant evidence because the impoundment order does not explicitly require it to do so. *See* Exhibit 1, ¶¶6-7; Exhibit 3. SCEA disagrees that TIG is prohibited from making the preservation copy. The duty to preserve evidence is explicitly required by Judge Illston in both the TRO and the Preliminary Injunction. *See* Docket Nos. 50 and 84. Moreover, if the removal of the circumvention devices and information related to circumvention occurs without an intact copy of each encrypted storage device, evidence of those devices as they originally existed will be permanently lost. Accordingly, SCEA requests that the Court order: (1) the creation by TIG of two images of each of the encrypted storage devices in a forensically sound manner; and (2) TIG to maintain in a secure vault for preservation purposes one of those images.

It is not clear why Mr. Hotz objects to the creation and preservation of the images. Counsel for Mr. Hotz has stated that the cost of imaging is only one consideration, but not the reason why Mr. Hotz is fighting the creation of images so vehemently. Mr. Hotz appears to be concerned that SCEA will somehow gain unfettered access to these images without permission. These concerns are wholly unfounded. The preserved images would be maintained in a safe and secure vault by TIG – the third party neutral. SCEA would not have any access to the images until the Court orders it for discovery purposes. And SCEA has even proposed protocols, rejected by Mr. Hotz, to address privacy and privilege concerns. Moreover, when counsel for Mr. Hotz raised privacy and privilege issues with the Court during the second hearing on the

TRO, Judge Illston reminded counsel that, but for Mr. Hotz's conduct, this issue would not have arisen. Exhibit 5 (February 10, 2011 Hearing Transcript, 25:3-12).

In a further effort to accommodate Mr. Hotz's concerns about the imaging, TIG also proposed that it would maintain the images after impoundment is complete in a safe and secure location at its facility in New Jersey. Alternatively, TIG even offered that counsel for Mr. Hotz, as an officer of the court, could maintain the images until the Court decided what should be done with the images. Exhibit 1, ¶8. Counsel for SCEA agreed to both proposals. However, Mr. Hotz has rejected both proposals, maintaining the unreasonable – and inexplicable – position that no images can be made.

### 3. Mr. Hotz's Alternative Proposal Is Unacceptable to TIG and SCEA And Is Contrary To Generally Accepted Forensic Protocol

Mr. Hotz's proposal is unacceptable. First and foremost, basic forensic evidence protocol dictates that images of the storage devices be made *before* any search or analysis is performed so that the storage device is preserved in its original form. Exhibit 1, ¶¶ 6-7, 11-13. By running searches for and accessing the circumvention devices on the storage devices, the evidence is altered as it existed when it was delivered to TIG. *Id*. at ¶¶11-14. Moreover, TIG states that it cannot use Mr. Hotz's computer to conduct its searches or analysis. *Id.* As a third party neutral, TIG must be able to independently verify that the infringing material is on the storage devices and determine whether any infringing material has been deleted or removed from the storage devices prior to their delivery to TIG. *Id*. at ¶11. Further, as part of its work to identify where the circumvention material resides, TIG must determine whether any infringing material is stored in any remote location.

As explained above, TIG must work off of a decrypted image of the storage device, not the original device. Mr. Hotz's proposal prevents this from happening. Furthermore, without images of the storage devices in their original form, TIG cannot know whether any tampering occurred after Mr. Hotz decrypted the storage devices. Exhibit 1, ¶11. Moreover, TIG will be unable to testify in court that its searches were conducted properly and completely. *Id*. at ¶15.

Mr. Hotz claims that neither the original impoundment order or his latest proposal require imaging. However, under either scenario, an examination of the storage devices is still necessary to verify the existence of the circumvention devices or information relating to the circumvention and to determine whether any such information has been deleted or transferred to other storage devices. Prior to conducting any of this analysis, imaging of the storage devices is required. Exhibit 1, ¶¶6-15.

### 4. SCEA's Need For Discovery

Another reason for imaging is the parties' discovery dispute, which was raised in their joint letter of February 18, 2011. Separate from the impoundment itself, SCEA intends to seek

the Court's permission to inspect these storage devices for jurisdictional evidence – such as, for example, emails related to jurisdiction showing distribution of the circumvention devices to individuals in California; Mr. Hotz's use of the PlayStation Network ("PSN"), which contains a forum selection clause subjecting the user to jurisdiction in California; and any PS3 System materials distributed by SCEA, including, among other things, software development kits or any PS3 System instruction manuals, that would show Mr. Hotz's contacts with SCEA in California. Mr. Hotz has objected to any inspection of these devices for purposes of jurisdictional discovery. Counsel for Mr. Hotz now claims that the impounded storage devices "are not necessary to respond to SCEA's jurisdictional discovery." However, SCEA should not be forced to rely on Mr. Hotz's word and is entitled to examine the devices as set forth above.

Should the Court permit SCEA to inspect the storage devices for jurisdictional discovery, the parties can meet and confer on an inspection protocol to address any of Mr. Hotz's privilege or privacy concerns. Indeed, SCEA has already made some suggestions that would involve the third party neutral. Further, any costs or fees associated with the inspection of the images for discovery purposes will be incurred by SCEA, not Mr. Hotz. For now, until the Court has the opportunity to address the discovery disputes, SCEA simply requests that images be created and maintained so that relevant evidence can be preserved for the duration of the case. At a minimum, the Court should order that all potentially discoverable evidence – even if it is the subject of the impoundment – be preserved while the parties' dispute is pending.

### 5. SCEA's Requested Relief

For the foregoing reasons, SCEA requests that the Court order that Mr. Hotz comply with TIG's recommended impoundment protocols and that those protocols be supplemented to ensure that preservation requirements are met as follows:

(1) TIG create and preserve two forensically sound images (e.g., bit stream images) of each impounded storage device in its encrypted form: One to be maintained by TIG in a secure vault for preservation purposes and the second to be used for decryption and/or any other necessary analysis by TIG;

(2) TIG create and preserve two forensically sound images (e.g., bit stream images) of each impounded storage device in its un-encrypted form. One to be maintained by TIG in a secure vault for preservation purposes and the second to be used for TIG's necessary analysis; and

(3) TIG maintain and preserve all of the forensically created images for the duration of the lawsuit.

SCEA further requests that the Court order Mr. Hotz to: (a) provide TIG with the tools and keys necessary to decrypt the impounded storage devices and the keys and passwords necessary to decrypt or unlock any protected files contained on the impounded storage devices;

(b) identify for TIG all virtual machines or hard disks stored or at any time run on the impounded storage devices.[3] Furthermore, to verify compliance with the impoundment order, SCEA requests that the Court order Mr. Hotz to provide a declaration setting forth:  (i) verification that all storage devices on which any circumvention devices or any information relating to Mr. Hotz's circumvention of the technological protection measures in the PS3 System are stored have been delivered to TIG; (ii) why the storage device used by Mr. Hotz in the January 7, 2011 YouTube video entitled "Jailbroken PS3 3.55 with Homebrew" was not delivered to TIG for impoundment; and (iii) the identity of any remote storage of the circumvention devices or any information relating to Mr. Hotz's circumvention of the technological protection measures in the PS3 System.[4] Finally, SCEA seeks fees and costs in relation to this motion.

Thank you very much for your time and consideration.

Respectfully submitted,

Kilpatrick Townsend & Stockton LLP             Stewart Kellar, E-ttorney at Law™

By: */s/ James G. Gilliland, Jr.*              By: */s/ Stewart Kellar*
    James G. Gilliland, Jr.                          Stewart Kellar
    Counsel for Plaintiff Sony Computer               Counsel for Defendant George Hotz
    Entertainment America LLC

Enclosures

---

[3] Such virtual machines may contain information relating to Mr. Hotz's circumvention of the technological protection measures in the PS3 System, and thus should be identified for TIG to search.

[4] Mr. Hotz agreed to provide such a declaration in his latest proposal on impoundment.